Calling case 13-1254, Z Technologies Corp v. The Lubrizol Corp. Oral argument not to exceed 15 minutes per side. Justin J. Hakala for the appellant. Good morning, Your Honors, and may it please the Court, my name is Justin Hakala on behalf of Plaintiff Appellant Z Technologies. I'd like to reserve two minutes for rebuttal, if I may. You may. Please proceed. Thank you. In 2007, Lubrizol acquired the assets of Lockhart's chemical, excuse me, metalworking group, and acquired, in so doing, 90% of the wax oxidate market. Z Technologies is a purchaser from both Lockhart and Lubrizol and was a price taker throughout that time from 2007 to 2009. During that period, Lockhart marched up in increments the price of wax oxidates over 70%. In 2009, the FTC intervened and issued a complaint, consent order, and ordered the divestiture of the Lockhart Group assets from Lubrizol, including permission for Additives International, the company to which these assets were to be divested, was also to be given permission to operate a flint plant and manufacture oxidates. It took an additional two years for Additives International to begin manufacturing a product that was competitive and that Z Technologies and other purchasers could use as a substitute product. And within approximately one year of that time, Z Technologies brought this action. The key question with respect to Plaintiff's Section 2 claim is whether those price increases comprise overt actions such that the statute of limitations is told under the continuing violations doctrine. As noted on briefs, there are very few cases dealing with this fact pattern specifically, which is to say an acquisition or a merger to monopoly. There are a number of cases in the broader context of Section 2 and in the even more broad context of the Sherman Act, which hold that overt price increases are overt actions for the purpose of the continuing violations doctrine. There are very few cases addressing that issue. Have you been able to find, and can you point us to any case where the Sherman Act, in a court opinion, has dealt with the Sherman Act and a merger monopoly rather than a conspiracy that applies to a continuing violation doctrine to toll the statute? A few would indicate that there are some out there, and I just wanted to know. The closest one, I think, Your Honor, is Freehand, which is out of the Northern District of California. In that case, it's a little bit difficult to figure out exactly what the court was referring to when it decided that the continuing violations doctrine applied. There were several things. There were first the overcharges. There were also additional acts taken by the defendant in that case to continue its monopoly power. The court referred to all three of those. There might have been four things, but the court referred to all of those things when it held that the continuing violations doctrine did toll the plaintiff's Section 2 claim. Now, that court simultaneously was dealing with a Section 7 case, and so that case involved an acquisition and was factually extremely similar to this case. Well, but the problem is this isn't a ribbon-matching exercise that we're in, and the fact that some district court in Northern California thought that the continuing violations doctrine ought to apply to a merger, even if it was clear as a bell that that was the holding, it certainly wouldn't persuade me if there was no other authority, no Sixth Circuit authority, nothing from the Supreme Court, just nothing but a district court opinion from California. I'm afraid that's not terribly persuasive. So what else is there? Well, Your Honor, there is the broader framework that I'm talking about. In Section 2 and Section 1 cases under the Sherman Act, including courts in this circuit, routinely apply the continuing violations doctrine. Defendant would have us, excuse me, Luberzal would have us adopt this approach by which we look at this case. It involves an acquisition, and so we apply the Section 7 framework and the new use doctrine. Well, that approach doesn't work for a number of reasons. First, it's unsupported by law, and although there's no specific case from the Supreme Court of the Sixth Circuit, as you mentioned, there's also no case that suggests that regardless of how the plaintiff pleads its case, we apply whatever the gravamen, whatever the basic facts suggest we should apply. It would be very difficult to work for a judge, and frankly, that's not how it works. The U.S. jurisprudence axiomatically permits plaintiffs to plead in the alternative. Well, let me just suggest to you, though, that if you're talking about a principle that you would apparently have us adopt, that is, we decide to apply the continuing violations doctrine to mergers, acquisitions, the fact that there aren't any cases that do that suggests that it isn't done. I mean, it's a negative authority situation. Now, you can argue that we ought to pull the rabbit out of the hat and do it, but I don't know how else you get there. Well, Your Honor, I'm getting there because this is, although it's also a Section 7 case, this is also a Sherman Act case, and in the Sherman Act, this court applies the continuing violations doctrine. There is no reason that we shouldn't do that. There are lots of different reasons. You knew what these price increases were. You paid the higher prices, what, three or four times in the first year after the merger, and then you sat on your hands for five years. So why, under the facts of this case, even if we were inclined to go that way, would that support adopting the doctrine in this case? Well, Your Honor, there are a couple things working against CE Technologies as the plaintiff. Number one, while it is taking those prices within that four-year limitations period, it's purchasing from the only possible seller of this product. It would essentially be suing its supplier. Obviously, there are business reasons at work there, and it doesn't want to do that. It waited until it had an alternate source to file this action. Second. So let's assume there was no alternative source that came along five years later. Under your theory, you could wait 20 years. You could pay the additional prices every year for 20 years, and then you could still sue and say continuing violation. What's the point of the court adopting a doctrine of that type when there is no conspiracy? Well, the point, Your Honor, is the principle still applies. The principle behind the continuing violations doctrine. The principle is we have a statute of limitations for a purpose. So what would be the principle of the exception swallowing the rule for, in my example, that 20-year period? Well, in that example, the reason would be it's those price increases that cause the harm to the plaintiff. It's not strictly the merger. The merger in and of itself doesn't do anything to the plaintiff. It's only that anti-competitive conduct that comes later. You could still have the price increases throughout the 20-year period in that hypothetical where you didn't have another supplier. So I'm not sure how that really helps the argument. Well, it provides the underpinning, the rationale behind applying the continuing violations doctrine. But the whole point of the antitrust doctrines with respect to mergers is that you gain monopoly power. The perceived concern or fear of that is that you'll use your monopoly power to take advantage of your customers, in this case by increasing prices. So if we adopt the doctrine that you're suggesting, there is no statute of limitations. Well, I don't know that that's true, Judge. I think there is. Then how would we calculate a statute of limitations, then, if we applied the continuing doctrine to a merger where it simply results in price increases for, say, the indefinite future? Well, let's split it into two cases. The first case is the Section 2 case. In a Section 2 case, you have to prove anti-competitive conduct, and that anti-competitive conduct is the price increases, and that should be the touchstone for calculating the statute of limitations. So every time there's a price increase, it would hold a new statute? Yes, it would trigger the statute. That's right. So you would have a rolling statute, then, with every new price increase? That's correct, and that's how price increases have been handled under Section 1 cases and other Section 2 cases that don't involve mergers. And then you would have to go back and determine how much of the price increase was due to the monopoly power versus how much was due to the price of increase in underlying supplies or whatever? That's correct, and that's the case in every antitrust case, Your Honor. There's always that expert dance where a regression analysis is performed and those damages are calculated. But nobody performs that regression analysis in terms of the beginning of the statute of limitations calculation, do they? I think that... You avoid all of that. That's the purpose of avoiding that by only applying this to conspiracies. Well, when you say nobody applies that, I'm not sure that I agree with you. I think that it's a simple matter for, well, it's no different for an economist, for an expert, for a party to establish its analysis based upon different points. Okay. Are there any cases that have done that in connection with a merger case? Not to my knowledge, Your Honor, and frankly, I haven't analyzed the damages aspect of the case in that detail, so I'm not certain I can completely answer that question. You did allude earlier to a good point, though. The point of a merger is we're worried about the merger affecting things. There should be a calculation of the statute of limitations. Well, under Section 7, the proofs at trial are different. You don't need to prove anti-competitive conduct. It makes sense under a Section 7 case to make a statute more limited, and that's why the doctrine is new use. It's more limited in that side of the case. Plaintiff doesn't have to prove that anti-competitive conduct at trial. Instead, we have the new use doctrine applying. That's why there's a distinction. And so while it may seem to the court, and it certainly seemed to the court below, that, well, this is just a merger case, the fact of the matter is at trial, that anti-competitive conduct will have to be proven, and that's not necessarily a small task because, as you mentioned, you have to prove the difference in prices. So that analysis becomes, well, this price increase was not just due to anti-competitive conduct market power. It was in spite of the fact that there weren't underlying cost increases with the raw product and so forth. So those additional proofs don't mean this is an automatic. It's not as simple as the Clayton Act claim, hence the different statute of limitations. And the key point there is while we're talking. So you would have exactly the same fact pattern. In this case, you have a merger. You have resulting price increases. You say those are super competitive prices, and you would analyze the statute of limitations differently under Sherman and Clayton. Yes, Your Honor. And has any court done that? Well, Free Freehand comes to mind just because I answered the question earlier. Again, that's out of the Northern District of California. But your cite to that case on your brief simply is cited to say when the acquiring firm changes the way it uses the acquired assets, the statute of limitations is restarted. That's the purpose for which you cite that case. Now it may say other things in the case, but that's not what we're discussing here. There's no change in the way the assets are used here in connection with the price increases. Well, with respect to plaintiff's section 2 claim, that's correct. You're talking about the limitations on the use of the Flint plant? That's right. There is that allegation with respect to the section 7 case, the second prong of this argument. And specifically, plaintiff's position there is that the court simply Let's stick with the price increase for just a second. So Free doesn't help you in connection with applying a different statute of limitations calculation under one act versus the other for a merger and resulting price increases? No, I think it does. Frankly, the court, and it's a district court opinion, but frankly the court applies new use to the section 7 claim and applies continuing violations to the section 2 claim. That's all you got? That's the only court that's done that? That's the only one that comes to mind. Okay, so now did you want to move on to the clause in the agreement that says you can't use the Flint plant? Certainly, Your Honor, and I'm out of time, but I'll be brief if the court will entertain me for another minute or so. Go ahead. Thank you. Plaintiff's claim here is pretty simple. The court found facts contrary to the standard of review. Essentially, plaintiff alleged, based on the FTC complaint, that there was some subsequent action taken to prevent the releasing of that Flint plant. As I stand here today, I don't know what that was. The court below doesn't know what that was. It's entirely possible that Lubrizol simply said, no, no, no, non-compete doesn't permit you to release that plant, in which case plaintiff loses in summary disposition or summary judgment. However, it's also possible that Lubrizol used some other market power, used some other business relationship with Lockhart. The possibility isn't the pleading standard after Twombly and Iqbal. It's plausible. So what do we have in the pleadings that suggest that your theory, which you candidly admit you have no basis for, is plausible? What I'm trying to candidly admit, Judge, is that my theory is thin and it is based on a single part of the FTC complaint. It's that there was a subsequent action which indicated that this plant couldn't be released. If that means that it was based on the initial non-compete. Okay. When you come back, could you point out to us where in that FTC order there is language that you're relying upon for the subsequent act? I'd be happy to. I don't – I'd be happy to, Judge. All right. Thank you. Thank you. May it please the Court. I'm Beth Grove, Chief Litigation Counsel for the Lubrizol Corporation, the appellee in this case. And the decision of the district court dismissing ZTECH's claims on statute of limitations grounds should be affirmed. And it should be affirmed for several reasons. Number one, the district court was correct in finding that the continuing violation theory does not apply in a context of a merger monopoly like this one. And it was also correct in finding that the hold and use doctrine does not extend the statute of limitations. If, in fact, the court below had found otherwise, it would have been contrary to a number of principles that this court, over about a six-case time period, has developed around the continuing use doctrine. Admittedly, those principles were developed in the context of the kinds of cases where continuing violation is typically applied, and that is conspiracies. But several important principles have come through all of those cases that apply here. And had Judge Zatkoff decided to extend the litigation and extend the statute of limitations, it would have been contrary to those principles. The most important of those principles is statute of limitations matter. There's a reason why we have them. Statute of limitations are intended to curb indefinite claims, to prohibit plaintiffs from sitting on their rights, and to provide defendants with some kind of legal peace. As the court said most recently in the Travel Agent Commission antitrust litigation, it's important to avoid a situation where an antitrust plaintiff can routinely salvage an otherwise untimely claim. So that's the first principle that Judge Zatkoff would have violated. The second principle is exceptions to the statute of limitations can only happen in extraordinary circumstances. Now, that is evidenced by the fact that in six times since 1981, this court has examined continuing violation in the context of a Sherman Act conspiracy claim. Five of those six times, this court has affirmed the dismissal of the claim based on statute of limitations grounds, finding that continuing violation cannot apply in those circumstances. Five out of six, that's extraordinary. And this court has also set forth a very nice, succinctly stated analysis for how you determine whether those extraordinary circumstances exist. And that's found, ironically, in the one case where the court did allow continuing violation to go forward, and that's the DXS case. And what the court said in DXS is, after going through and struggling with the analysis, not struggling, but trying to create the analysis in the Barnofsky Oil case, in the Martin Tupple case, and in the Peck case, finally in DXS the court said, here's what we're going to do with continuing violation. Number one, you need to look at what the first act was in their chronology and determine, was there an anti-competitive effect from that act? Then you look at the subsequent acts, and you ask yourself, do these subsequent acts on their own constitute overt acts? Overt acts that are different. Two requirements for that that the court set forth. Number one, it has to be independent of the original violation, of that original act that you looked at in the first place. Independent and different. And number two, it has to cause an injury to the plaintiff that is independent and different, new, from any harm that might have been caused by that original act. Had Judge Zadkoff gone ahead and allowed this case to proceed, it would have done so in the face of all of that analysis that this court has put forth, and it would have found contrary to the way this court has typically found. Now your honors are correct. The question of whether or not continuing violation applies in a merger monopoly has not been addressed by this court. In fact, it's been addressed by very few courts. And I'd like to simply qualify. It's my reading of the Freehand case, your honors. And granted, that is a California case. But if you read that case, Judge Koh was struggling with whether or not the transaction itself, the purchase by Adobe of Freehand, constituted in and of itself a sufficient violation. What she fell back on, when you look at the continuing violation analysis that she puts forward, are the subsequent acts by Adobe that of their own could have constituted independent acts. The decision to stop manufacturing the Freehand software. The decision to start to move customers toward Adobe's own products. These in and of themselves could have been independent. And in that context, she allowed that case to go forward. And so in the context of it would be Lubrizol's position, Judge Daugherty, you asked the question, is there any case where, anywhere, where continuing violation has been applied in the context of a merger monopoly? And I would submit that Freehand does not stand for that proposition. Judge Koh looked for additional information. She looked for another violation. And interestingly enough, let me point out the other case that Z-Tech relies on heavily is the wholesale grocery case to argue that price increases after a merger can allow application of the continuing violation analysis. Well, a couple of interesting things about that case. The first is that's a District Court of Minnesota case, which, as you know, is in the Eighth Circuit and was following the Midwestern machinery case, which I would submit to you is a very important case. While not controlling authority, important authority and a good way to think about how to apply this case. What Judge Montgomery did in that case was to look at whether or not the agreement between the two grocery wholesalers, the original act, necessarily caused the price increases. And it's interesting when you read that opinion because that was a market allocate, the first act was a market allocation agreement between two wholesalers. They agreed to allocate the market between the Midwest and New England. But then when you read the court's analysis, the continuing violation theory was applied because after that, these two independent entities separately conspired to fix prices. And so the price increases, the super competitive prices Judge Montgomery found, were the result of the conspiracy. That's right. And interestingly enough, I have news. Subsequently, about six weeks ago, Judge Montgomery decided another similar case in which she specifically said, in that case, for those who are authoring any opinions in this case, that case is Insulate versus Advanced Finishing Systems, 2014 Westlaw 943224. It was decided March 11, 2014. Same judge as Wholesale Grocery. And in that case, there was an argument that Graco purchased its only competitors in the marketplace for fixed plastic fittings and subsequently raised prices. Did a few other things as well. But what's interesting about that case, when you read it, is when she is determining whether or not the Sherman Act should, whether or not the continuing violation should apply to the Sherman Act claim, she talks about, she denies it and she says there's no allegation in the complaint of a subsequent conspiracy or any activity after the merger. Now, granted, she doesn't come right out and say, I'm not going to apply continuing violation to a merger under Section 2 of the Sherman Act. But what she does do and what her analysis shows, she's looking for more. Now, let's apply these concepts to this case. In this case, we have alleged 2007 Lubrizol purchases the wax-oxidate line of products from Lockhart, its only competitor, according to Z-Tech, in the marketplace. And we'll take those facts as true. Lubrizol attains a 98% market share for wax-oxidates. And for those of you who don't know, wax-oxidates, it's a dying industry. These are things that are used to rust-proof metal. If you've ever heard of Z-Tech, if you remember Z-Bart, you know, you rust-proof your car. They're becoming obsolete. But Lubrizol purchased these products from the product line from Lockhart in 2007. A month later, according to the allegations of the complaint, Lubrizol raises prices to super-competitive levels. And that's important because these are alleged to be super-competitive prices. You can only charge a super-competitive price if you're a monopolist. Were we not a monopolist, we could have raised prices. To have a super-competitive price, as alleged in the complaint, there must be an initial violation in the first place. So essentially, that's a concession that this was not an independent act. They necessarily had to be related to the monopoly that Lubrizol attained. And the other important date, so we've got the important dates of February 2007 for the purchase of the product line. We've got March 2007 for the beginning of the raising to super-competitive prices. And then we are sued in May of 2012, five years and three months later. These are the important dates that the court needs to keep in mind as we're looking at this. So let's apply the DXS analysis to this situation. What is the first allegation of a violation? What's the first act? The first act here is the monopoly. Lubrizol's alleged monopoly. And what is the next act? ZTAC makes it easy for us. The next act is the raising of prices to super-competitive levels. You can't have that unless there's a violation first. So by definition... Are you going to get to the non-competitive clause? I'd be happy to talk to you about the non-competitive clause. Have you run out of your time? Sure, I hear you. So let's talk about the hold-and-use doctrine and the allegation in the complaint. A couple important things to keep in mind before we get to the antitrust analysis of that. Let's talk about the Iqbal Twombly analysis of that, which I believe is very important. That allegation, and it's important to note, that allegation was added to the amended complaint. It didn't appear in the original complaint. The original complaint was filed based solely on the price increases. I filed a motion to dismiss, not unlike the one I filed later, making all these same arguments. The amended complaint came around and it pulled this language. Lubrizol subsequently indicated that the non-compete provision would prohibit releasing of the Lockhart plant. The Lockhart plant, just factually so you understand, still existed. Lubrizol moved into the Lockhart plant to produce the product line that it purchased from Lockhart. But there was still capacity within the Lockhart plant.  Ultimately, that's where Additives International went in and operated out of the same plant. But a couple important procedural points. Number one, that language was lifted out of the FTC's complaint, which is not subject to Rule 8 requirements for the allegation of specific facts. It's not subject to Iqbal Twombly. It's an administrative complaint. And if you note, the decision in order that's attached to that complaint specifically says Lubrizol will waive its rights under the non-compete to allow Additives International to move into the Lockhart plant and use that excess capacity. Now, if in fact these were separate acts, there would be no reason for Lubrizol to waive its rights under the non-compete. The non-compete was part of the asset purchase agreement. The non-compete itself was in place at the time of the merger. And so for assuming that Lubrizol's indication, and there are some allegations, by the way, or arguments in the brief, that Lubrizol actually took an action to prohibit releasing. I think that that is speculative at best, to put it nicely. There are no facts to support that. There's no information to support that. I mean, there is a pleading standard that a plaintiff has to meet before a defendant can be subjected to the potential for trouble damages, or in any case, that ZTAC has to meet, and ZTAC hasn't met that. But assuming for the sake of argument that in fact there was an indication and an action, the action of enforcing a non-compete agreement that's part of a merger is not a new and different use. It is by definition prohibiting competition to come into the Lockhart plant. That's exactly what the provision was when the asset purchase agreement was signed. And the allegation for the original act here is that Lubrizol was a monopolist and had no competitors. I submit to you that enforcing an asset purchase agreement, non-compete provision to prevent competition later is not a new or a different use. And so from Lubrizol's perspective, the hold and use doctrine would not apply here. And ironically, ZTAC cites to Midwestern Machinery, which it doesn't want to pay attention to for the Section 7 Clayton Act violations or apply to the Section 2 Sherman Act violations, but it cites to Midwestern Machinery and Concord Boat, and in both of those cases the court rejected application of the hold and use doctrine to extend the statute of limitations. So the bottom line for hold and use, Judge McKeague, is number one, it is procedurally, it is not stated in a way that is procedurally sufficient. It is woefully short of the Iqbal-Twombly standard. It is lifted out of a complaint that was never subject to the Iqbal-Twombly standard or the Rule 8 requirements for what must be in a complaint in federal court, as opposed to as part of an administrative settlement that's never going to be challenged by the commissioners of the Federal Trade Commission because that's a decision in order settling a case. Point one. And point two, it is not a new or a different use. It is exactly the same use that it was intended for at the time the merger was entered into. Your Honors, from this court's perspective, this court has looked at six different cases, and in each case this court has held that the continuing violation doctrine cannot be applied if the original action is essentially the same as, causes the same harm as the subsequent violations. And so one could argue, although this court, I don't believe, has ever applied the hold and use doctrine, certainly I haven't found it in the antitrust context, the same principles that apply to continuing violation, the importance of the statute of limitations, the importance of exceptions being extraordinary, could carry over to the hold and use analysis as well. I thought you were wrapping up there, Counsel. I've wrapped? Yes, yes. Anything else from the panel? No, thank you. Thank you. May it please the Court, Judge, you asked for the citation. Plaintiff's allegation is paragraph 25 of the First Amendment complaint, which is the record page 70. The FTC complaint was attached as Exhibit 1 to that complaint, page 86. I was thinking that when you referred to that, and I may not have caught it correctly, that it was an order from the FTC. This is, as your opposing counsel says, simply in a complaint. Well, when the FTC issues complaints, it does a couple of things. Its practice is, when it negotiates a consent order, is to issue the complaint at the same time as the consent order. The consent order is issued for public comment and becomes finalized after a public comment. I just think it raises a really interesting question that somebody files a complaint against somebody, whether it's a government agency or not. That then satisfies Iqbal and Twombly because somebody alleged something someplace? Well, it certainly doesn't satisfy a standard or proof at trial, but it does provide a factual basis and a good faith basis to file a complaint. It's not intended to be a mystery. I candidly admit this is what we know and this is why we know it. That's never been at issue here. If that doesn't satisfy the court, if that's not enough, then I guess that's the case. What is your suspicion here as far as what this new act was? The FTC, and this was paraphrased by counsel, the FTC indicates in its language, Lubrizol subsequently indicated that this provision barred Lockhart from leasing its plant in Flint. Let's take that at face value. You enter into a non-compete agreement that says nobody else can use this facility. Somebody down the road asks to use the facility, and you say no. It's prohibited by this particular agreement. How is that a new act, even if true? Right in that light, Judge, you're absolutely right. That wouldn't be a new act. So you must be suspecting then that the FTC complaint language refers to something else. What are you suspecting that it means? What I'm suspecting it means, and what I would put to this court, is the light most favorable to the appellant, is that it wasn't language in the non-compete because Lubrizol had to subsequently indicate. I don't know if that was something done with a wink and a nod, or if that's perfectly acceptable and is merely, as you mentioned, an affirmation of the non-compete. It could be either way. But I think in the light most favorable to the plaintiff, that is a new use. And it may be a very small amount of discovery that tells us otherwise. The light most favorable to the plaintiff has to be grounded in something, and where do you derive that out of that language? Frankly, it's the language subsequently indicated. I don't understand why Lubrizol would have to subsequently indicate something that's in the contract. Because how would somebody know what was in the original contract if they didn't subsequently indicate why somebody couldn't do something? I'm trying to figure out what the logical basis is to read something into subsequently indicated that's different than what arises out of the original non-compete. I'm not saying that you don't have an argument there. I just don't understand it. Well, I read this as they have to subsequently indicate the provision barred Lockhart. They're telling Lockhart this is the entity with which they negotiated the non-compete. Lockhart has knowledge of what's in that non-compete. Why do they have to subsequently indicate anything to a party that they were negotiating with and that entered into the agreement with? I see. That's my point, Your Honor. Anything else? No. All right. Thank you. Thank you for your time today.